403 A.2d 564

**COMMONWEALTH of Pennsylvania, Appellant,**

v.

**Stephanie HINSON a/k/a Stephanie Jackson, Appellee.**

Supreme Court of Pennsylvania.

Argued March 5, 1979.

Decided July 5, 1979.

Robert E. Colville, Dist. Atty., Robert L. Eberhardt, Charles W. Johns, Kathryn Lease Simpson, Asst. Dist. Attys., Pittsburgh, for appellant.

Paul D. Boas, Pittsburgh, for appellee.

Before EAGEN, C. J., and O'BRIEN, ROBERTS, NIX, MANDERINO and LARSEN, JJ.

## OPINION

PER CURIAM:

The Court being equally divided; the order of the trial court is affirmed.

ROBERTS, J., filed an Opinion in Support of Affirmance in which O'BRIEN and MANDERINO, JJ., join.

NIX, J., filed an Opinion in Support of Reversal.

LARSEN, J., filed an Opinion in Support of Reversal in which EAGEN, C. J., joins.

## OPINION IN SUPPORT OF AFFIRMANCE

ROBERTS, Justice.

The post-verdict court, per Judge Popovich, correctly ruled that appellant is entitled to a new trial because despite appellant's request, the trial court did not instruct the jury on involuntary manslaughter. *Commonwealth v. Smith,* 474 Pa. 559, 379 A.2d 96 (1977); *Commonwealth v. Garcia,* 474 Pa. 449, 378 A.2d 1199 (1977) (Opinion of Roberts, J., joined by O'Brien and Manderino, JJ., announcing the judgment of the court). Accord, *Commonwealth v. Bishop,* 483 Pa. 401, 397 A.2d 405 (1979) (Dissenting Opinion of Roberts, J., joined by Manderino, J.); *Commonwealth v. Dickson,* 482 Pa. 517, 394 A.2d 442 (1978) (Dissenting Opinion of Roberts, J., joined by O'Brien and Manderino, JJ.); *Commonwealth v. Terrell,* 482 Pa. 303, 393 A.2d 1117 (1978) (Concurring Opinion of Roberts, J., joined by O'Brien, J.; Concurring Opinion of Manderino, J.); *Commonwealth v. Thomas,* 482 Pa. 292, 393 A.2d 1122 (1978) (Opinion in Support of Reversal of Roberts, J., joined by O'Brien, J.; Opinion in Support of Reversal of Manderino, J.); *Commonwealth v. Dussinger,* 478 Pa. 182, 386 A.2d 500 (1978); *Commonwealth v. Polimeni,* 474 Pa.

628

430, 378 A.2d 1189 (1977) (Concurring Opinion of Roberts, J., joined by O'Brien, J. Concurring Opinion of Manderino, J.); *Commonwealth v. Ford,* 474 Pa. 480, 378 A.2d 1215 (1977) (Concurring Opinion of Roberts, J., joined by O'Brien, J.; Concurring Opinion of Manderino, J.).

Accordingly, the order of the trial court granting appellant a new trial should be affirmed.

O'BRIEN and MANDERINO, JJ., join in this Opinion in Support of Affirmance.

## OPINION IN SUPPORT OF REVERSAL

NIX, Justice.

I have repeatedly expressed the view that the charging decision should be within the province of the prosecutor and except where there may be constitutional implications, *see e.g., Keeble v. United States,* 412 U.S. 205, 93 S.Ct. 1993, 36 L.Ed.2d 844 (1973), the exercise of that discretion should be free of judicial interference.[1] In this case, appellant was not charged with involuntary manslaughter, nor was there an issue presented in the trial that questioned the presence of an element that distinguished involuntary manslaughter from one of the crimes charged. Under these circumstances, the requested instruction on involuntary manslaughter was properly refused and the court *en banc* erred in disturbing the conviction for this reason.

## OPINION IN SUPPORT OF REVERSAL

LARSEN, Justice.

The instant appeal by the Commonwealth from an Order of the trial court granting the appellee's motion for a new

1. *Commonwealth v. Dussinger,* 478 Pa. 182, 197, 386 A.2d 500, 507 (1978) (Nix, J., concurring); *Commonwealth v. Manning,* 477 Pa. 495, 500, 384 A.2d 1197, 1199 (1978) (Nix, J., dissenting); *Commonwealth v. Gartner and Pfaff,* 475 Pa. 512, 516 n. 3, 381 A.2d 114, 125 n. 3 (1977) (Nix, J., concurring and dissenting); *Commonwealth v. Ford,* 474 Pa. 480, 486, 378 A.2d 1215, 1218 (1977) (Nix, J., dissenting); *Commonwealth v. Garcia,* 474 Pa. 449, 471, 378 A.2d 1199, 1210 (1977) (Nix, J., dissenting); *Commonwealth v. Polimeni,* 474 Pa. 430, 449, 378 A.2d 1189, 1199 (1977) (Nix, J., dissenting).

trial[1] again raises the question of the appropriate standard to be applied in deremining when an instruction on the elements of involuntary manslaughter is required to be given under the 1972 Crimes Code.[2] The issue comes before us this time as the result of the trial court's determination in ruling upon post-verdict motions, that the decision of this Court in *Commonwealth v. Garcia,* 474 Pa. 449, 378 A.2d 1199 (1977), required that it give to the jury an instruction on involuntary manslaughter, upon the request of the appellee or his counsel. Although stating that the evidence did not warrant such an instruction, the trial court nevertheless concluded that it had incorrectly refused appellee Stephanie Hinson's request for an instruction on involuntary manslaughter and, on that basis, entered an Order granting appellee a new trial. Because I believe the trial court erred in so concluding, I would reverse the trial court's Order.

Stephanie Hinson was charged in a Criminal Information with separately set forth counts of Murder of the First Degree, Murder of the Third Degree and Voluntary Manslaughter in connection with the homicide of her husband, William Hinson, on December 28, 1976. The deceased was shot six times with a .38 caliber revolver in a hospital room where he had been confined since December 6, 1976. His hospital confinement was caused by the infliction of a gunshot wound by an unknown assailant.

At trial, the Commonwealth produced evidence to establish that an intentional act on the part of the appellee caused the death of the victim. The jury was presented with the following evidence by the prosecution in support of said charges:

1. The Commonwealth may appeal from a trial court order granting a new trial when that order is based on a pure question of law. *Commonwealth v. White,* 482 Pa. 197, 393 A.2d 447 (1978); *Commonwealth v. Melton,* 402 Pa. 628, 168 A.2d 328 (1961).

2. Act of December 6, 1972, P.L. 1482, No. 334, § 1, *et seq.,* 18 Pa.C.S. § 101 *et seq.* The Crimes Code was essentially adapted after the Model Penal Code, drafted by the American Law Institute. (Proposed Official Draft, 1962.)

Stephanie Hinson, the common-law wife of the decedent, went to visit the decedent, William Hinson, in the hospital on December 28, 1976, knowing that William Hinson was scheduled to be discharged the following day. She had brought with her various clothing for William Hinson in an airline-type bag. Also in the bag was a .38 caliber revolver brought pursuant to William's directions. William Hinson had demonstrated a fear for his personal safety while in the hospital and had requested the appellee to bring the weapon to his hospital room almost daily during his stay. On at least one occasion the decedent had kept the revolver in his room overnight. Upon entering the hospital room at approximately 7:30 p. m., the decedent verbally abused the appellee, grabbed her around the throat and punched her once in the face. After being struck the appellee pulled the gun out of the bag of clothing and fired six rounds into the decedent. William Hinson was pronounced dead within the half-hour, suffering wounds of the head, neck, chest and arm. The appellee left the room within minutes of firing the shots and fainted in the hospital hallway. Expert testimony established that the appellee fired the gun. The gun had a pull test pressure of 11 to 11½ pounds when fired as a double action weapon and was probably fired exactly six times.

The defense evidence established a volatile relationship between the victim and appellee over a several year period, with the appellee receiving frequent physical and verbal abuse from the decedent up to the hour of the homicide. The defense evidence, similar to the Commonwealth's, establishes an intentional act on the part of the appellee resulting in the death of William Hinson. The defense attempted to convince the jury that the appellee should be found not guilty on a theory of self-defense.

The defense requested in its points for charge that the trial court instruct the jury on the elements of involuntary manslaughter even though the prosecution had charged her specifically with only counts of Murder of the First Degree, Murder of the Third Degree and Voluntary Manslaughter.

The court, at that time, determined that the evidence did not warrant such a charge and refused this point for charge. The defense took a specific exception. The jury found the appellee guilty of Murder of the Third Degree.

Unfortunately for the bar, both prosecution and defense, and the trial bench, the problem exemplified by the instant appeal continues to be subject to differing views among members of this Court. Since this Court's opinions, filed on October 7, 1977, in *Commonwealth v. Polimeni*, 474 P. 430, 378 A.2d 1189 (1977), *Commonwealth v. Garcia*, 474 Pa. 449, 378 A.2d 1199 (1977) and *Commonwealth v. Ford*, 474 Pa. 480, 378 A.2d 1215 (1977), several cases have come before this Court raising the present issue, although frequently with crucial factual distinctions, receiving only majority support as to result, not as to rationale. Although that trend continues in the instant case, in writing in support of reversal of the trial court's Order I take this opportunity to set forth in summary fashion my reasons why I believe a majority of this Court should adopt the approach to this problem proposed by the drafters of the Model Penal Code.

While recognizing that our legislature did not adopt the Model Penal Code in its entirety, particularly the section I will refer to *infra,* we should not overlook the fact that the Model Penal Code, Proposed Official Draft, was the product of extensive study and formed the basis for the bulk of the 1972 Crimes Code. Also, I believe that the failure of our legislature to adopt Section 1.07(5) of the Model Penal Code was influenced by the then state of the law in Pennsylvania on the right to a charge on included offenses.

Section 1.07(5) of the Model Penal Code provides:

(5) Submission of Included Offense to jury:

The Court shall not be obligated to charge the jury with respect to an included offense unless there is a rational basis for a verdict acquitting the defendant of the offense charged and convicting him of the included offense.

The relevant comments to this section state:

> Subsection (5) states that the court shall instruct the jury with respect to included offenses only in cases where the evidence makes it appropriate to do so. Where the proof goes to the higher inclusive offense and would not justify any other verdict except a conviction of that offense or an acquittal, it would be improper to instruct the jury with respect to included offenses. See e. g. *State v. Sandoval,* 59 N.M. 85, 279 P.2d 850 (1955). Instructions with respect to included offenses in such cases might well be an invitation to the jury to return a compromise or otherwise unwarranted verdict. Cf. *People v. Mussenden,* 308 N.Y. 558, 127 N.E.2d 551 (1955); *Commonwealth v. Comber,* 374 Pa. 570, 97 A.2d 343 (1953). The submission of an included crime is justified only where there is some basis in the evidence for finding the defendant innocent of the crime charged and yet guilty of the included crime. *People v. Mussenden, supra.* The presence of such evidence is the determinative factor. For example, if the prosecutor's evidence tends to show a completed robbery and there is no conflicting evidence relating to elements of the crime charged, a contention that the jury might accept the prosecution's evidence in part and might reject it in part ought not to be sufficient. See *State v. Hicks,* 241 N.C. 156, 84 S.E.2d 545 (1954).

The American Law Institute formulation, as thus set forth, permits the trial judge to evaluate the evidence, from any source, and determine as a matter of law whether a verdict on the uncharged included offense is supportable.

I would prefer this approach to all those discussed in previous opinions of this Court. Recognizing that there are legitimate concerns underlying those other approaches, I submit that the complete Model Penal Code approach assimilates those concerns into its formulation, without any undue emphasis upon any one of them, while being consistent with the jurisprudential inheritance we have received.

The Model Penal Code approach does no harm to the concern for the discretionary charging function of the prosecutor because only where a lesser "included offense" can be

supported on a "rational basis" can that lesser offense be charged upon request. And certainly, in my view, any "mercy dispensing" power the jury may possess can only validly be exercised in favor of a verdict having a rational basis.[3]

Thus, applying the American Law Institute approach to the instant appeal [which was taken by the Commonwealth from the trial court's Order finding that it erred in denying the appellee's request for an instruction on involuntary manslaughter], the trial court erred in granting appellee a new trial since no rational basis existed for such a charge and the court's refusal to instruct as requested was not an abuse of discretion. Therefore, that order should be reversed and the matter remanded for further proceedings.

EAGEN, C. J., joins in this Opinion in Support of Reversal.

---

**3.** *See* the concerns expressed by Justice Nix in *Commonwealth v. Manning*, 477 Pa. 495, 503, 384 A.2d 1197, 1201 (1978).