John Edward BISHOP, P2541, Petitioner,

v.

J. F. MAZURKIEWICZ, and the Attorney General of the Commonwealth of Pennsylvania, Respondents.

Civ. A. No. 79–1004.

United States District Court,
W. D. Pennsylvania.

Feb. 25, 1980.

Alan Ellis, State College, Pa., Leonard I. Sharon, Pittsburgh, Pa., for petitioner.

Edward G. Biester, Jr., Atty. Gen. of the Commonwealth, Harrisburg, Pa., Thomas F. Morgan, Dist. Atty. of Clearfield County, Clearfield, Pa., for respondents.

## OPINION

COHILL, District Judge.

### I.

*Facts*

On June 3, 1976, a jury in the Court of Common Pleas of Clearfield County, Pennsylvania rejected the argument of self-defense of defendant, John Edward Bishop (petitioner herein), and convicted him of voluntary manslaughter in the slaying of Franklin Albright. Bishop had claimed that on December 5, 1975, he and Franklin Albright were sitting in Bishop's home drinking beer. Albright then exposed himself and insisted that Bishop engage in oral sex with him. Bishop refused, but Albright persisted in his demand. Bishop then became frightened, went into his bedroom, loaded a shotgun and returned to confront Albright, who stood about six feet tall. Bishop pointed the shotgun at Albright, and ordered him to leave the house. Instead of leaving, Albright charged the petitioner with penis still exposed. Bishop fired, killing Albright.

The trial judge instructed the jury on first-degree murder, third-degree murder and voluntary manslaughter, but he refused the defendant's request to give an instruction on involuntary manslaughter. On appeal from his conviction, Bishop cited as error the failure of the trial judge to instruct the jury on involuntary manslaughter. In *Commonwealth v. Bishop*, 483 Pa. 401, 397 A.2d 405 (1979), a divided Pennsylvania Supreme Court affirmed the conviction without opinion by a three to two vote.

Bishop has now launched a collateral attack on his conviction through a petition for writ of habeas corpus. A United States District Court may grant such a writ "in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a) (1976). For example, in *Hallowell v. Keve*, 555 F.2d 103, 106 (3d Cir. 1977), the Third Circuit stated that a jury instruction given in a State trial is reviewable by a federal court on collateral attack where that instruction violates specific federal constitutional standards imposed on the States through the due process clause of the Fourteenth Amendment. In a thoughtful report, United States Magistrate Robert Mitchell recommended that this Court issue the writ in the instant case. We accept the magistrate's recommendation, although we base our decision on a somewhat different analysis.

## II.

### Lesser Included Offense

■ In Pennsylvania, a person commits involuntary manslaughter "when as a direct result of the doing of an unlawful act in a reckless or grossly negligent manner, or the doing of a lawful act in a reckless or grossly negligent manner, he causes the death of another person." 18 Pa.Cons.Stat.Ann. § 2504(a) (Purdon's 1973). The Pennsylvania Supreme Court fleshed out this statutory definition in *Commonwealth v. Moore*, 463 Pa. 317, 344 A.2d 850 (1975):

Involuntary manslaughter, which differs from murder in that specific intent and malice are absent, encompasses, "the killing of another without malice and unintentionally, but in doing some unlawful act not amounting to a felony nor naturally tending to cause death or great bodily harm, or in negligently doing some act lawful in itself, or by the negligent omission to perform a legal duty." *Commonwealth v. Mayberry*, 290 Pa. 195, 198, 138 A. 686, 687 (1927).

463 Pa. at 322, 344 A.2d at 853. The traditional definition of involuntary manslaughter corresponds very closely to the one set forth in *Moore*:

Involuntary manslaughter is an unintentional homicide without malice aforethought for which the law places responsibility on the defendant because he is guilty of an unlawful act or omission of a nature which is not so wrong as to make the defendant liable for murder, nor so harmless as to make him not responsible. Specifically, the defendant is guilty of involuntary manslaughter if death was caused by some accident occurring while he committed a nonfelonious act which is malum in se but having no natural tendency to cause death or serious bodily harm, or as the result of the defendant's culpable negligence, either in doing an act, or in omitting to do an act required by law.

R. Anderson, 1 *Wharton's Criminal Law and Procedure* § 272, at 577–78 (1966) (footnotes omitted). Based on the foregoing, we must say that distilled to its essence, involuntary manslaughter is an unintentional killing caused by reckless behavior.

Pennsylvania courts have held that involuntary manslaughter is a lesser included offense of murder. *See Commonwealth v. Garcia*, 474 Pa. 449, 460–65, 378 A.2d 1199, 1205–08 (1977); *Commonwealth v. Myers*, —— Pa.Super. ——, 405 A.2d 1252, 1254 (1979). These courts arrived at this decision by interpreting 18 Pa.Cons.Stat.Ann. § 2501(b) (Purdon's 1973), which states that "[c]riminal homicide shall be classified as murder, voluntary manslaughter, or involuntary manslaughter."

The Constitution of the United States does not require a trial judge to instruct the jury in every case on all lesser included offenses. Federal courts often have addressed this issue in the context of bank robbery prosecutions. The federal bank robbery statute creates three separate offenses: robbing a bank while putting life in jeopardy through the use of a deadly weapon, 18 U.S.C. § 2113(d) (1976); robbing a bank by force or intimidation, 18 U.S.C. § 2113(a) (1976); and taking bank property with the intent to steal, 18 U.S.C. § 2113(b) (1976). If uncontradicted evidence establishes that the bank robbers used force or intimidation, the trial judge should not instruct the jury on section 2113(b). *See United States v. Richardson*, 562 F.2d 476, 480–81 (7th Cir. 1977), *cert. denied*, 434 U.S. 1072, 98 S.Ct. 1257, 55 L.Ed.2d 776 (1978). Similarly, in *United States v. Callison*, 577 F.2d 53 (8th Cir.), *cert. denied*, 439 U.S. 873, 99 S.Ct. 209, 58 L.Ed.2d 187 (1978), the Eighth Circuit found no error in a trial judge's refusal to instruct the jury on section 2113(a). The appellate court explained that

> [t]here was no dispute in the proof on the element of assault—the Government's evidence showed that the robbery was conducted with firearms and that threats to kill were made; defendant testified he did not participate in the robbery at all. Thus there was nothing from which the jury could conclude that defendant robbed the bank but did so without committing an assault or placing lives in jeopardy.

577 F.2d at 56.

The Third Circuit also has accepted the proposition that a trial judge does not necessarily have to instruct on all lesser included offenses. In *Hallowell v. Keve*, 555 F.2d 103 (3d Cir. 1977), a Delaware prisoner brought an application for a writ of habeas corpus following his conviction by a jury for second-degree murder. The petitioner argued that the trial judge had violated his constitutional rights by refusing to instruct the jury on involuntary manslaughter. The Third Circuit noted that as a matter of Delaware state law,

involuntary manslaughter is the unintentional "killing of another without malice while engaged in the doing of an unlawful act, *not in itself felonious or tending to do great bodily harm.*" Appellant's own testimony demonstrates that he was engaged in an unlawful act, i. e., taking a "swipe" at the victim with a knife, in itself tending to great bodily harm.

555 F.2d at 106 (citation and footnotes omitted) (emphasis in original). The court therefore affirmed the dismissal of the petition because the petitioner's "own testimony precluded the charge he requested." *Id.* at 108. The Third Circuit concluded that "[n]either due process nor any other constitutional guarantee is offended by a trial judge's refusal to charge the jury on a matter not presented by the evidence." *Id.* at 107.

No evidence presented at John Bishop's trial would support a jury verdict of involuntary manslaughter. Bishop did not argue that the gun had discharged accidently or that he had pointed it away from the decedent; rather, he contended that he had shot Franklin Albright in self-defense. The defendant himself testified that he had loaded the weapon, aimed it at Albright, and pulled the trigger. Based on such evidence, a jury could not rationally find that the defendant had unintentionally shot the decedent. *See Commonwealth v. Thomas*, 482 Pa. 312, 319–21, 393 A.2d 1122, 1125–26 (1978) (Opinion in Support of Affirmance, Pomeroy, J.) (firing at onrushing attacker can establish self-defense or voluntary manslaughter, but not involuntary manslaughter). *Cf. Commonwealth v. Myers*, —— Pa. Super. ——, 405 A.2d 1252, 1255–56 (1979) (evidence that defendant fired high-powered rifle at sign across frequently travelled road supports conviction for involuntary manslaughter). To characterize Bishop's actions as "reckless" would distort that term beyond recognition.

When no evidence exists to support a finding that the defendant acted unintentionally, a judge does not usurp the function of the jury when he, in effect,

directs a verdict on the issue by refusing to give an involuntary manslaughter instruction. "It is the province of the jury to weigh the evidence, and the jury is entitled to believe all, part, or none of the evidence presented." *Commonwealth v. Garcia*, 474 Pa. 449, 467, 378 A.2d 1199, 1209 (1977) (Plurality opinion, Roberts, J.). But a jury may not create evidence where none exists. *See Sparf and Hansen v. United States*, 156 U.S. 51, 63–64, 15 S.Ct. 273, 277–278, 39 L.Ed. 343 (1895). Thus, a court does not violate a defendant's right to due process when it refuses to charge on an offense that has no basis in the evidence.

### III.

#### *Lack of Standards—The Present State of the Law*

■ Although a refusal to charge a jury on involuntary manslaughter does not violate due process when no evidence in the record would support such a verdict, a violation of due process may occur if trial judges must decide for themselves the circumstances in which they should give an involuntary manslaughter instruction. Over the past three years, the Pennsylvania Supreme Court has been deeply divided on the availability of an involuntary manslaughter instruction when the evidence would not support a finding of reckless activity that unintentionally caused a death. This division has been reflected in a series of inconsistent decisions that have given similarly situated defendants disparate treatment and have left trial judges without guidance.

The Supreme Court's difficulties with this issue began in *Commonwealth v. Garcia*, 474 Pa. 449, 378 A.2d 1199 (1977). The facts of *Garcia* tell the tale of a typical barroom brawl that ended tragically. Commonwealth witnesses testified that during the fight the defendant drew a pistol and shot the victim from close range. The jury heard a very different version of the shooting from the defendant. He testified that the weapon fell from his belt while he was wrestling with the victim; the pistol discharged accidently as he was trying to pick it up. *Id.* at 454, 378 A.2d at 1202.

The trial court refused the defendant's request for an involuntary manslaughter instruction, and the jury convicted the defendant of voluntary manslaughter. On appeal, the Pennsylvania Supreme Court reversed and ordered a new trial. In a plurality opinion that represented the view of three justices, Justice Roberts stated that

[b]ecause involuntary manslaughter is a lesser included offense of murder, and because the evidence would support an involuntary manslaughter verdict whenever it would support a murder or voluntary manslaughter verdict, a defendant should be entitled to a requested instruction on involuntary manslaughter in all criminal homicide prosecutions. . . .

. . . The United States Constitution requires the Commonwealth to prove every element of the offense, including the degree of culpability, beyond a reasonable doubt. Thus, in any case in which the evidence would be sufficient to sustain a verdict of murder or voluntary manslaughter, the jury might conclude that the Commonwealth failed to meet its burden of proving malice, intent, or knowledge, but has proven recklessness or negligence.

*Id.* at 465–66, 378 A.2d at 1208 (citation omitted). Justice Roberts emphasized that a jury may believe all, some or none of the testimony of each witness. He then expressed the view that the failure of a trial judge to give an involuntary manslaughter instruction would usurp the function of the jury as the judge of the facts. *Id.* at 468–69, 378 A.2d at 1209–10.

Concurring in the result, Justice Pomeroy concluded that

a jury could rationally have found the appellant guilty of involuntary manslaughter on the evidence presented; thus I agree that the trial court should have granted appellant's request to have the jury instructed on involuntary manslaughter, and that a new trial is required because this was not done. . . .
[T]here is here no need to reach . . .

the question whether a defendant being tried for murder is entitled on request to an involuntary manslaughter charge regardless of the evidence presented to the jury.

*Id.* at 470, 378 A.2d at 1210 (footnote omitted). Justice Pomeroy thus postponed to another day a rebuttal to Justice Roberts' position that evidence would support an involuntary manslaughter verdict whenever it would support a murder or voluntary manslaughter verdict.

The next appeal to the Pennsylvania Supreme Court based on a failure to instruct the jury on involuntary manslaughter arose in *Commonwealth v. Smith*, 474 Pa. 559, 379 A.2d 96 (1977). The Supreme Court reversed a manslaughter conviction and granted a new trial by a three to two decision, with the majority issuing only a brief per curiam opinion. Citing *Garcia*, the Court in *Smith* stated that "[i]n every prosecution for criminal homicide . . . , a defendant is entitled, upon request, to a jury instruction on involuntary manslaughter." 474 Pa. at 561, 379 A.2d at 97.

The sweeping rule established by *Garcia* and *Smith* might appear to have put the question to rest, but it failed to command a majority of the Supreme Court in *Commonwealth v. Thomas*, 482 Pa. 312, 393 A.2d 1122 (1978). As in *Garcia*, the charges in *Thomas* arose from the fatal results of a barroom brawl. After the bartender had ejected the combatants, they continued the fight in the street. Darryell Thomas, the defendant, testified that two of the victims—both armed with knives—attempted to stab him. He stated that he then stepped back, drew a pistol and shot them in self-defense. Following the trial judge's refusal to give an involuntary manslaughter instruction, the jury convicted Thomas of voluntary manslaughter.

On appeal, an evenly divided Supreme Court upheld the conviction. Writing in support of affirmance, Justice Pomeroy first noted that no evidence in the record supported a finding of involuntary manslaughter. He explained that

this is not a case in which it is contended that a gun was fired accidently, or a case where it is claimed that a gun was not aimed at the victim. Instead, this is a case where a firearm is discharged, assertedly in self-defense but under circumstances "naturally tending to cause death or serious bodily harm," and since "any recklessness which might be derived from the record relates only to the accuracy of appellant's aim," a finding that the defendant was merely negligent or reckless would be irrational.

482 Pa. at 321–22, 393 A.2d at 1126–27 (citations omitted). Justice Pomeroy then stated that a trial judge should not give an involuntary manslaughter instruction where no rational basis exists in the evidence for that verdict. *Id.* at 323–28, 393 A.2d at 1127–30. Although recognizing that a jury has complete control over what evidence it accepts, he believed that

[a] reconciliation of the jury's prerogatives and the necessity that the verdict conform to a rational interpretation of the evidence is properly made . . . by a requirement that the lesser offense of involuntary manslaughter be submitted, with appropriate instructions, to the jury . . . when there is some conflict in the evidence which would warrant finding the defendant innocent of a higher degree of criminal homicide but guilty of involuntary manslaughter. It is not necessary, of course, that the defense come forward with any evidence of its own in order to create this sort of conflict. It may develop by cross-examination, by disparities in the Commonwealth's case, or from equally plausible interpretations of ambiguous evidence submitted by the prosecution.

*Id.* at 326–27, 393 A.2d at 1129 (citations and footnotes omitted). Justice Pomeroy did not feel obligated to accord *stare decisis* effect to the broad rule set forth in *Garcia* and *Smith* because only a plurality of the Court supported the rule in *Garcia*, and *Smith* was a three to two decision issued by a Court that normally consists of seven members.

Naturally, the dissenters in *Thomas* displayed more respect for the Court's prior decisions. Justice Roberts, relying on *Smith*, reiterated in his Opinion in Support of Reversal that the Court previously had "held that in every prosecution for criminal homicide under the Crimes Code, the defendant, upon request, is entitled to a jury instruction on involuntary manslaughter." 482 Pa. at 329, 393 A.2d at 1130.

Petitioner Bishop's direct appeal from his conviction provided the Supreme Court with its fourth opportunity to discuss the scope of involuntary manslaughter. *Commonwealth v. Bishop*, 483 Pa. 401, 397 A.2d 405 (1979). Only five members of the Court participated in the disposition of the case, however. Furthermore, although the Court affirmed the conviction by a three to two vote, the majority declined to issue an opinion. Thus, the majority failed to provide any guidance to trial courts as to how the latter should reconcile the holding in *Smith* with the decision in *Bishop*.

If the Commonwealth's trial judges were not already confused, the Supreme Court's decision in *Commonwealth v. Warin*, 484 Pa. 555, 400 A.2d 588 (1979), practically insured that inconsistencies would develop in the lower courts. *Warin* arose from a domestic dispute. The decedent—the defendant's father—initiated the confrontation by criticizing his son for failing to help with repairs that the father was making on the house. A fight ensued in which the son was bloodied. The defendant retired to his room for a few minutes, but then, armed with a steel rod, he went outside to the driveway where the decedent was working. As the father turned to meet his son, the son hit him on the side of the head with the rod. The father fell to the pavement and died from a cerebral hemorrhage. *Id.* at 557–58, 400 A.2d at 589.

After the trial judge refused to give an involuntary manslaughter instruction, a jury convicted the son of third-degree murder. By a three to two vote, the Pennsylvania Supreme Court reversed the conviction and ordered a new trial. Speaking for the majority, Justice Nix noted that a consensus had yet to develop among the Justices concerning the availability of involuntary manslaughter instructions. *Id.* at 558, 400 A.2d at 589. He then reviewed the various positions that had been expressed in prior opinions: Justice Pomeroy would permit such an instruction only when a rational basis for an involuntary manslaughter verdict existed in the evidence; Justice Roberts believed that a jury always should receive instructions on all lesser included offenses; and Justice Manderino felt that trial judges should give involuntary manslaughter instructions in every criminal homicide case because it allows juries to exercise compassion. *Id.* Turning to the case before him, Justice Nix concluded "that any one of the proffered rationales would support the conclusion that the trial court erred in refusing appellant's request for a jury instruction on the crime of involuntary manslaughter." *Id.* (footnote omitted).

Chief Justice Eagen, writing for the dissenters, succinctly stated their position:

[A] jury instruction on involuntary manslaughter is required only when the trial evidence provides a rational basis for such a verdict. Clearly there is no such rational basis here.

According to the appellant's own trial testimony, he intentionally struck the blow which caused the victim's death. The fact that appellant may have acted under heat of passion does not make the crime involuntary manslaughter.

*Id.* at 559, 400 A.2d at 590 (citation omitted). The Chief Justice correctly noted that the undisputed facts of *Warin* do not fit within the traditional definition of involuntary manslaughter. Passion or provocation will reduce murder to voluntary manslaughter, but not to involuntary manslaughter.

These rulings by the Supreme Court have caused confusion in the trial courts, as *Commonwealth v. Hinson*, 485 Pa. 626, 403 A.2d 564 (1979), illustrates. The defendant in *Hinson* had shot her husband six times with a revolver following an argument. She relied on a self-defense rationale to justify the shooting. No evidence suggested that

the defendant had acted only recklessly or that she accidently had fired the six rounds into the decedent.

The trial judge initially refused to give an involuntary manslaughter instruction, and the jury convicted the defendant of third-degree murder. After receiving a motion for a new trial, however, the trial judge decided that he had erred in failing to charge on involuntary manslaughter. He therefore granted the motion. The Commonwealth appealed. Splitting three to three, the Supreme Court allowed the trial judge's decision to stand.

In the most recent Supreme Court case to discuss the scope of involuntary manslaughter, *Commonwealth v. Holmes*, 486 Pa. 415, 406 A.2d 510 (1979), the pendulum swung again. The issue arose in the context of an appeal based on the alleged ineffectiveness of the defendant's trial counsel. The appellant argued that his counsel's failure to request an involuntary manslaughter instruction established that he did not have an adequate legal advocate.

The Supreme Court affirmed Holmes' conviction. In an opinion that spoke for the three-judge majority, Justice Nix stated that the

appellant does not argue, nor could he argue based upon any of the testimony in this case, that there was evidence presented capable of supporting an involuntary manslaughter verdict. Thus, under either the rational basis analysis or the disputed element theory, the trial court would have been correct in refusing a request for an involuntary manslaughter charge. Although it is true that some members of the court would be of the view that appellant was entitled to such a charge either under a lesser included offense analysis or because of the inherent mercy dispensing power of the jury, these views do not comprise a majority of the Court.

406 A.2d at 515. Justice Roberts concurred in the result, finding that "[i]n circumstances where Commonwealth evidence is incon-

clusive, trial counsel may properly decide to forego the instruction on the expectation that the jury, disbelieving the Commonwealth's evidence, would return a verdict of acquittal." *Id.* at 516. He reaffirmed his previously expressed position, however, that every defendant who is prosecuted for criminal homicide is entitled to an involuntary manslaughter instruction. *Id.* at 515. A fifth justice dissented on other grounds.

These seven cases must necessarily leave Pennsylvania trial judges uncertain as to when they should give an involuntary manslaughter instruction. In six situations where the trial judge chose not to give the instruction for lack of an evidentiary basis, the Pennsylvania Supreme Court affirmed convictions in *Thomas, Bishop* and *Holmes* and ordered new trials in *Smith, Warin* and *Hinson.* Similarly situated defendants have received different treatment, and an end to the confusion does not appear to be in sight; therefore, we must determine whether the current state of the law violates any constitutional rights of defendants who have been charged with criminal homicide.

## IV.

### The Constitutional Rights of the Defendant

An analogous problem confronted the Third Circuit a few years ago in *United States ex rel. Matthews v. Johnson*, 503 F.2d 339 (3d Cir. 1974), *cert. denied*, 420 U.S. 952, 95 S.Ct. 1336, 43 L.Ed.2d 430 (1975). That case involved a petition for writ of habeas corpus filed by a Pennsylvania prisoner who had been convicted of first-degree murder.[1] He argued that the trial judge had deprived him of his Fourteenth Amendment rights to due process and equal protection by refusing to charge the jury on voluntary manslaughter. The district court agreed with the petitioner and issued the writ.

The Third Circuit, sitting en banc, affirmed on due process grounds. 503 F.2d at 340. The appellate court began its analysis

---

1. The Pennsylvania Supreme Court had affirmed the conviction by a four to two vote.

*Commonwealth v. Matthews*, 446 Pa. 65, 285 A.2d 510 (1971).

by noting that the Pennsylvania Supreme Court had increased the availability of voluntary manslaughter. Traditionally, voluntary manslaughter was "the felonious and intentional killing of another without malice aforethought, . . . ordinarily committed in a sudden heat of passion caused by adequate legal provocation." R. Anderson, 1 *Wharton's Criminal Law and Procedure* § 272, at 577 (1966) (footnotes omitted). The Pennsylvania Supreme Court had broadened the scope of voluntary manslaughter by holding that a jury in a criminal homicide case could return a voluntary manslaughter verdict even though the record would support only a murder verdict because there was no evidence of provocation or passion. *See Commonwealth v. Kellyon,* 278 Pa. 59, 122 A. 166 (1923). As explained by Justice Pomeroy,

> the rationale of the doctrine . . . is found in a combination of two factors: a realistic appreciation of the humanity of those who sit on our juries, and the legal concept that voluntary manslaughter is by definition a lesser offense than murder but one included within a murder indictment.

*Commonwealth v. Hoffman,* 439 Pa. 348, 359, 266 A.2d 726, 732 (1970). This decision to provide criminal homicide juries with greater flexibility does not of itself generate a constitutional issue.

The constitutional problem arose when the Pennsylvania Supreme Court supplemented its initial ruling with a decision that gave "a trial judge complete discretion in deciding whether or not to submit voluntary manslaughter to the jury as a possible verdict in a case where there is no evidence of passion or provocation." *Commonwealth v. Matthews,* 446 Pa. 65, 80, 285 A.2d 510, 517 (1971) (Dissenting Opinion, Pomeroy, J.) (citations omitted). Chief Justice Bell in *Commonwealth v. Pavillard,* 421 Pa. 571, 220 A.2d 807 (1966), set forth the reasoning that supported this grant of discretion:

> In the instant case there was absolutely no evidence of legal passion or provocation such as to reduce the crime from murder to voluntary manslaughter. That being so, this Court has consistently and

wisely held that the trial Judge is not required to charge the jury on the issue of voluntary manslaughter. A charge on a point or issue which is unsupported by any evidence is likely to confuse the jury and obstruct Justice.

*Id.* at 575–76, 220 A.2d at 810 (citations omitted). The Chief Justice also stated, however, that "we . . . find nothing inconsistent with [the] rule . . . that a jury may find a defendant who under the evidence of the Commonwealth has committed the crime of murder, guilty of voluntary manslaughter even in the absence of legal passion or provocation." *Id.* at 576–77, 220 A.2d at 810.

"[I]f the Pennsylvania rule had been uniform in the sense that a judge was not permitted to give a manslaughter charge where there was no evidence of passion or provocation, there would have been no due process problem." *United States ex. rel. Cannon v. Johnson,* 396 F.Supp. 1362, 1368 (E.D.Pa.1975), *aff'd,* 536 F.2d 1013 (3d Cir.), *cert. denied,* 429 U.S. 928, 97 S.Ct. 334, 50 L.Ed.2d 298 (1976). The Pennsylvania Supreme Court triggered a due process problem, however, by allowing the trial judge to decide on a case-by-case basis, without guidelines or standards, whether to give a voluntary manslaughter instruction. A jury cannot return a particular verdict unless it receives a charge on that alternative. At Matthews' trial,

> the jury was given the option of returning a verdict of murder in the first degree calling for life imprisonment or death, or alternatively, a verdict of murder in the second degree, calling for a sentence of up to twenty years. Another trial judge, or the same judge on another day, could have permitted the jury to return a verdict of voluntary manslaughter, calling for a sentence of no more than twelve years. To deny appellee the possibility of a lesser verdict with a lesser restraint of liberty is permissible only if the denial comports with due process. To deny appellee the possibility of a lesser restraint of liberty because of a practice which permits arbitrary trial court activi-

ty is offensive to those settled concepts of due process.

*United States ex. rel. Matthews v. Johnson,* 503 F.2d 339, 345 (3d Cir. 1974) (footnote omitted), *cert. denied,* 420 U.S. 952, 95 S.Ct. 1336, 43 L.Ed.2d 430 (1975). The Third Circuit therefore affirmed the issuance of a writ, concluding that "[t]o hold otherwise is to expose a defendant to the idiosyncracies of the trial judge to whom the case has been assigned, or the 'whim or caprice' of a given judge on a given day." 503 F.2d at 346 (footnote omitted).

In the present case, the trial judge did not act whimsically, capriciously or in bad faith. A similar problem of arbitrariness arose, however, because the absence of any standards defining the appropriate circumstances in which a jury should receive an involuntary manslaughter instruction left the trial judge free to make his own decision. As a result of such freedom, some trial judges have given an involuntary manslaughter instruction even where the evidence would not support such a verdict. Other trial judges have refused to give an instruction absent an evidentiary basis, and on appeal, some of these subsequent convictions have been affirmed and others have been reversed. These inconsistent appellate rulings ensure that future juries considering the fates of similarly situated defendants will not receive the same set of options. This violates due process because the particular set available to a given jury is determined solely according to the judgment of the trial judge. The predictable result of this arbitrary system also violates equal protection because it treats similarly situated defendants differently while failing to advance any identifiable state policy to justify the disparate treatment.

We do not, through this Opinion, intend to criticize the state trial judges, who, without adequate guidance, conscientiously have tried to divine the correct path when faced with the task of instructing juries in criminal homicide cases. Neither do we express any opinion on the ultimate issue of whether a jury should or should not receive an instruction on involuntary manslaughter in a criminal homicide case where no rational basis exists in the evidence for such a verdict. Only the Pennsylvania Supreme Court, or the Pennsylvania Legislature, properly can answer that question as a matter of Pennsylvania law.

What we face today is a question of federal constitutional law. The Fourteenth Amendment requires this Court to hold that the trial judge presiding in Bishop's case deprived the defendant of his due process and equal protection rights by declining to give an involuntary manslaughter charge. Until either the Pennsylvania Supreme Court or the Pennsylvania Legislature clearly instructs that a trial judge should not give an involuntary manslaughter charge absent an evidentiary basis for it, such a charge must be given in all homicide cases. If some defendants receive the benefit of such a jury instruction, the Fourteenth Amendment mandates that all similarly situated defendants receive it.

An appropriate order follows.