415 A.2d 399

**COMMONWEALTH of Pennsylvania**

v.

**Michael WHITE, Appellant.**

Supreme Court of Pennsylvania.

Argued April 22, 1980.

Decided June 2, 1980.

Joel Harvey Slomsky, Philadelphia, for appellant.

Robert B. Lawler, Chief, Appeals Division, Asst. Dist. Atty., Andrew B. Cohn, Asst. Dist. Atty., for appellee.

Before EAGEN, C. J., and O'BRIEN, ROBERTS, NIX, LARSEN, FLAHERTY and KAUFFMAN, JJ.

## OPINION OF THE COURT

LARSEN, Justice.

Appellant Michael White was arrested for the robbery of Taylor's Variety Store in North Philadelphia and the shooting death of one Georgell Lewis, the store's manager. He proceeded to trial before a jury and was found guilty of murder of the second degree, robbery, and criminal conspiracy. After denial of post-verdict motions, appellant was sentenced to life imprisonment on the murder conviction, a prison term of ten years to twenty years on the robbery conviction, and another prison term of five years to ten years on the conspiracy conviction, the latter two sentences to run consecutively with each other but concurrently with the sentence for murder. Appellant then brought this appeal in which he raises several assignments of error. However, only one warrants discussion.[1]

Appellant contends that the trial court erred in refusing his request for a jury instruction on the crime of involuntary manslaughter. Appellant argues that the evidence presented at trial warranted this instruction, and that even if it did not, a jury instruction on involuntary manslaughter is mandatory in all homicide prosecutions, because involuntary manslaughter is a lesser-included offense of murder.

The reason for such alternative arguments is this Court's prior inability to agree upon whether a jury instruction on the crime of involuntary manslaughter need be given in all homicide prosecutions, or only those in which the evidence could rationally lead to a verdict of guilty of that offense and not guilty of the greater homicide offenses. The dilem-

---

1. Those issues raised by appellant which we find to be without merit and not requiring in-depth analysis are: 1) the trial court erred in permitting the wife of the deceased to testify, as she was eight months pregnant at the time; 2) the suppression court erred in finding appellant's waiver of constitutional rights valid; 3) the suppression court erred in not finding that appellant's statements to the police were the product of unnecessary delay between arrest and arraignment; and 4) the trial court erred in not declaring a mistrial on the basis of prejudicial and inflammatory remarks made by the prosecutor during summation.

ma which this has created for litigants was noted by this writer almost one year ago:

> Unfortunately for the bar, both prosecution and defense, and the trial bench, the problem exemplified by the instant appeal [whether a jury instruction on involuntary manslaughter need be given in all homicide prosecutions] continues to be subject to differing views, among members of this Court. Since this Court's opinions, filed on October 7, 1977, in *Commonwealth v. Polimeni*, 474 Pa. 430, 378 A.2d 1189 (1977); *Commonwealth v. Garcia*, 474 Pa. 449, 378 A.2d 1199 (1977) and *Commonwealth v. Ford*, 474 Pa. 480, 378 A.2d 1215 (1977), several cases have come before this Court raising the present issue, although frequently with crucial factual distinctions, receiving only majority support as to result, not as to rationale.

*Commonwealth v. Hinson*, 485 Pa. 626, 403 A.2d 564, 566–67 (1979) (Opinion in support of Reversal). Even more unfortunate is the fact that the issue is, as of yet, unresolved.[2] Consequently, we begin by addressing the question of whether appellant was entitled to a jury instruction on the crime of involuntary manslaughter, without regard to the evidence presented at trial.

 It has long been the rule in this Commonwealth that a trial court should not instruct the jury on legal principles which have no application to the facts presented at trial. See *Commonwealth v. Palmer*, 222 Pa. 299, 71 A. 100 (1908) and *Commonwealth v. Tervalon*, 463 Pa. 581, 345 A.2d 671 (1975). The reason for this rule is apparent; the jury's duty is to render a true and correct verdict, and instructing the jury on legal principles that cannot rationally be applied to the facts presented at trial may confuse them and place obstacles in the path of a just verdict. We have found this principle applicable to non-homicide prosecutions, where it is generally held that a trial court is not obliged to

**2.** See, *Bishop v. Mazurkiewicz*, 484 F.Supp. 871 (W.D.Pa.1980), where a defendant was ordered discharged from custody if not retried within 60 days, on the grounds that this Court's inconsistent rulings in this area created a situation at the defendant's prior trial which violated due process and equal protection of law.

grant a request for an instruction on a lesser-included offense unless there is support for such an instruction in the evidence. See, e. g. *Commonwealth v. Wilds*, 240 Pa.Super. 278, 362 A.2d 273 (1976) (possession of a controlled substance with intent to deliver and possession of a controlled substance); *Commonwealth v. Franklin*, 248 Pa.Super. 145, 374 A.2d 1360, allocatur refused 248 Pa.Super. xxxv (1977) (assault/resisting arrest and disorderly conduct); *Commonwealth v. Dessus*, 214 Pa.Super. 347, 257 A.2d 867, allocatur refused, 214 Pa.Super. xl (1969) (rape and fornication); and *Commonwealth v. Melnyczenko*, 238 Pa.Super. 203, 358 A.2d 98, allocatur refused, 238 Pa.Super. xxxvii (1976) (burglary and unlawful entry). This is also the general rule in the federal system. See, *Sansone v. United States*, 380 U.S. 343, 350 n. 6, 85 S.Ct. 1004, 1009 n. 6, 13 L.Ed.2d 882 (1965) where the United States Supreme Court noted: "This Court has long recognized that to hold otherwise would only invite the jury to pick between the felony and the misdemeanor so as to determine the punishment to be imposed, a duty Congress has traditionally left to the judge". And, finally, it is in accord with the approach advocated by the American Law Institute's Model Penal Code, Proposed Official Draft, which is the basis for the vast majority of our 1972 Crimes Code. The pertinent section of that Code, § 107(5), provides:

Submission of Included Offense to jury:

The Court shall not be obligated to charge the jury with respect to an included offense unless there is a rational basis for a verdict acquitting the defendant of the offense charged and convicting him of the included offense.

and, the comments explain the rationale for the proposed rule:

Subsection (5) states that the court shall instruct the jury with respect to included offenses only in cases where the evidence makes it appropriate to do so. Where the proof goes to the higher inclusive offense and would not justify any other verdict except a conviction of that offense or an acquittal, it would be improper to instruct the jury with respect to included offenses. See e. g. *State v. Sandoval,*

59 N.M. 85, 279 P.2d 850 (1955). Instructions with respect to included offenses in such cases might well be an invitation to the jury to return a compromise or otherwise unwarranted verdict. Cf. *People v. Mussenden*, 308 N.Y. 558, 127 N.E.2d 551 (1955); *Commonwealth v. Comber*, 374 Pa. 570, 97 A.2d 343 (1953). The submission of an included crime is justified only where there is some basis in the evidence for finding the defendant innocent of the crime charged and yet guilty of the included crime. *People v. Mussenden, supra.* The presence of such evidence is the determinative factor. For example, if the prosecutor's evidence tends to show a completed robbery and there is no conflicting evidence relating to elements of the crime charged, a contention that the jury might accept the prosecution's evidence in part and might reject it in part ought not to be sufficient. See *State v. Hicks*, 241 N.C. 156, 84 S.E.2d 545 (1954).

■ The reasoning advanced by this line of precedent is particularly cogent in the realm of homicide prosecutions where difficult distinctions separate the various degrees of homicide. For, as the late Mr. Chief Justice Bell observed in commenting on the evils of unnecessary joinder in homicide cases:

When we take into consideration the additional points the trial Judge must define in a murder case, such as presumption of innocence, reasonable doubt, and usually several others (depending upon the particular facts of that particular case) the jury would likely become so befogged by legal technicalities and so confused by the maze of the law as to make a clear comprehension, weighing and correlation of the facts exceedingly difficult, and the rendition of a just verdict both difficult and doubtful.

*Commonwealth v. Comber*, 374 Pa. 570, 578, 97 A.2d 343, 346–47 (1953). As a consequence, charging the jury on extraneous offenses in homicide trials would be inapposite and detrimental to the sound administration of justice. On the other hand, failing to instruct the jury on relevant lesser-included offenses can preclude a defendant from ob-

taining a fair trial. See *Commonwealth v. Polimeni*, 474 Pa. 430, 378 A.2d 1189 (1977) (Opinion Announcing the Judgment of the Court), and *Commonwealth v. Moore*, 463 Pa. 317, 344 A.2d 850 (1975). It is thus necessary to select an approach to instructing the jury on lesser-included offenses which, while taking into consideration the relationship between the evidence and the requested instruction, ensures that the accused's right to a fair trial will be well protected. To this end and to *finally* clarify this situation, we now hold that in a murder prosecution, an involuntary manslaughter charge shall be given only when requested, and where the offense has been made an issue in the case and the trial evidence reasonably would support such a verdict.

Having articulated the standard, we turn now to the evidence presented at trial. The uncontradicted evidence of the Commonwealth established that on January 19, 1977, appellant, co-felon Eughenia Jones, and three other men were riding in a car when it was decided that they would rob Taylor's Variety Store. The impetus for this decision was appellant's mortgage payment having come due, and Taylor's Variety Store was selected because appellant believed the manager dealt in drugs. The five men entered the store and found the manager in the back room. Appellant and Eughenia Jones then remained in the back room with the manager while the other three men stationed themselves at the front door and the entrance to the back room. Appellant instructed the manager to lay down so that he could be searched and, after he had done so, Jones took his watch and ring.

It is here that the evidence conflicts. While the manager was on the ground being searched, a .38 caliber revolver was pressed against the back of his head. This weapon discharged and killed the manager after the watch and ring were taken, but it is unclear as to whether appellant or Jones was holding it at the time. The Commonwealth placed appellant's statement into evidence wherein appellant stated that he shot the manager accidentally. Appellant, however, placed Eughenia Jones' statement into evidence

wherein he also admitted to firing the fatal shot. This was, in fact, appellant's sole defense to the Commonwealth's case.

■ This conflict is, however, of no moment and completely irrelevant to the instant question. By either the Commonwealth's or the defense's version of the occurrences, appellant and Jones were engaged in an armed robbery at the time of the shooting. At minimum, this constitutes murder of the second degree, and that result obtains regardless of whether the revolver was discharged by appellant or Jones, intentionally or accidentally. See 18 Pa.C.S.A. § 2502(b) and *Commonwealth v. Yuknavich*, 448 Pa. 502, 295 A.2d 290 (1972). Thus, if the jury found that appellant participated in the instant acts, it could not rationally acquit him of murder and find him guilty of involuntary manslaughter. The trial court did not, therefore, err in refusing appellant's request for a jury instruction on that offense.

Consequently, the judgments of sentence are affirmed.

ROBERTS, J., filed a dissenting opinion in which O'BRIEN, J., joined.

NIX, J., concurred in the result.

ROBERTS, Justice, dissenting.

I have filed a dissenting opinion in *Commonwealth v. Williams*, 490 Pa. 187, 415 A.2d 403 (1980), joined by Mr. Justice O'Brien, which sets forth our disagreement with the majority's attempt to "clarify" when a requested instruction on involuntary manslaughter is to be given. This attempted "clarification," supported by nothing more than the majority's assertion, wholly disregards the clear language of the Crimes Code, 18 Pa.C.S. § 2501(a). Section 2501(a) defines "criminal homicide" as follows:

> "*Offense defined.*—A person is guilty of criminal homicide if he intentionally, knowingly, recklessly or negligently causes the death of another human being."

As the Reporter's Comment to Section 2501 points out, "[section 2501] defines the unified offense of 'criminal homicide,' which includes murder, voluntary manslaughter or

involuntary manslaughter." Toll, Pennsylvania Crimes Code Annotated 307 (1974). Thus the Crimes Code requires that "in every murder prosecution a defendant is entitled, upon request, to a jury instruction on involuntary manslaughter." *Commonwealth v. Garcia*, 474 Pa. 449, 469, 378 A.2d 1199, 1210 (1977) (Roberts, J., joined by O'Brien & Manderino, JJ.). Because appellant's timely request for an involuntary manslaughter instruction was improperly denied, judgment of sentence should be reversed and a new trial awarded.

O'BRIEN, J., joins in this dissenting opinion.