415 A.2d 403

**COMMONWEALTH of Pennsylvania**

v.

**Fred WILLIAMS, Appellant.**

Supreme Court of Pennsylvania.

Argued April 18, 1980.

Decided June 10, 1980.

188

Robert B. Mozenter, Philadelphia, for appellant.

Robert B. Lawler, Chief, Appeals Div., James Jordan, Philadelphia, for appellee.

Before EAGEN, C. J., and O'BRIEN, ROBERTS, NIX, LARSEN, FLAHERTY and KAUFFMAN, JJ.

## OPINION OF THE COURT

FLAHERTY, Justice.

In a jury trial in the Philadelphia Court of Common Pleas the appellant, Fred Williams, was convicted of second degree murder, robbery, burglary, and possession of an instrument

of crime. Post-verdict motions were denied. Judgment of sentence was set at life imprisonment for the murder conviction and concurrent terms of imprisonment were imposed for the remaining offenses.

Appellant, in the course of committing burglary and robbery, used an iron pipe to beat to death a fifty-four year old blind man who owned and lived in the apartment building where the burglary and robbery occurred. Eyewitnesses observed the appellant, lying in wait for the blind man to descend a flight of stairs, step from a hiding place and deliver twelve forceful blows with a metal pipe to the face, skull, and neck of the man. During this beating, the blind man, who carried a knife for protection, inflicted a number of minor cuts upon appellant. The blind man, believing a robbery to be in progress in the first floor apartment where he resided, had descended the steps. Appellant initiated the attack, and, while continuing to strike the blind man, said "the MF ain't dead yet, but he going to die now."

Appellant's first seven contentions are that: 1) the court erred in not charging the jury under 18 Pa.C.S. § 308, relating to evidence of intoxication being considered to reduce the degree of a murder conviction; 2) certain testimony should not have been admitted into evidence under the res gestae exception to the hearsay rule; 3) the court's charge to the jury on voluntary manslaughter was inadequate; 4) error was committed in instructing the jury as to self-defense; 5) the robbery charge should have been withdrawn from the jury's consideration; 6) inflammatory photographs were improperly admitted into evidence; and 7) the burglary verdict was not sustained by sufficient evidence. We find the foregoing assertions to be without merit. Appellant's eighth assignment of error is that the jury should have been charged on involuntary manslaughter.

The evidence establishes beyond a reasonable doubt that appellant committed murder during the commission of burglary and robbery. Appellant asks this Court to overturn his second degree murder conviction, and to grant a new trial, because the jurors were not instructed upon the

elements of involuntary manslaughter. No evidence what-
soever, from any source, appears in the record to support a
determination that the killing resulted from an accident or
negligence. Indeed, given the facts of this case, it would be
ludicrous to suggest that appellant recklessly or negligently
struck twelve blows with an iron pipe to the blind victim's
head.

At trial, defense counsel made no reference to involuntary
manslaughter in his summation and suggested to the jury no
basis for returning such a verdict. Only after summation, in
fact, did defense counsel raise the subject by requesting that
the court submit an involuntary manslaughter charge.

The trial court refused the requested instruction, be-
cause, at the time of trial,[1] it was the established rule that a
jury was without power to return a verdict of involuntary
manslaughter upon an indictment for murder. See *Com-
monwealth v. Polimeni*, 474 Pa. 430, 378 A.2d 1189 (1977)
(Opinion of Mr. Justice Pomeroy); *Commonwealth v. Garcia*,
474 Pa. 449, 378 A.2d 1199 (1977) (Opinion of Mr. Justice
Roberts). Three months after appellant's second degree
murder conviction, this Court ruled for the first time that
the Crimes Code of 1972, 18 Pa.C.S. § 101 *et seq.* rendered an
involuntary manslaughter conviction permissible in a mur-
der prosecution. *Commonwealth v. Polimeni*, supra; *Com-
monwealth v. Garcia*, supra; *Commonwealth v. Ford*, 474
Pa. 480, 378 A.2d 1215 (1977). Since these cases were
handed down, trial judges have lacked a standard approved
by a majority of the full Court defining the circumstances
under which a defendant's request for an involuntary man-
slaughter charge should be granted. To clarify this situa-
tion, we now hold that in a murder prosecution, an involun-
tary manslaughter charge shall be given only when request-
ed, and where the offense has been made an issue in the case
and trial evidence reasonably would support such a verdict.
The rule is firmly grounded in logic and policy, for to
instruct a jury on possible verdicts that are unsupported by
any evidence can serve only to pervert justice: Not only

1. June 28, 1977.

may the jury be confused by what appear to be irrelevant instructions, and thereby possibly reach a mistaken verdict, but a conviction for the lesser offense may occur out of discriminatory favor for the defendant or out of animosity for the victim, or the jury might substitute its own visceral reaction for the classification established by the legislature. See, *e.g.*, *Commonwealth v. Hinson*, 485 Pa. 626, 628–633, 403 A.2d 564 (1979) (Opinion of Mr. Justice Larsen); *Commonwealth v. Thomas*, 482 Pa. 312, 322, 393 A.2d 1122 (1978) (Opinion of Mr. Justice Pomeroy); *Commonwealth v. Manning*, 477 Pa. 495, 503, 384 A.2d 1197 (1978) (Opinion of Mr. Justice Nix); *Commonwealth v. Garcia*, 474 Pa. at 478–479, 378 A.2d 1199 (Opinion of Mr. Justice Nix). Nor can the involuntary manslaughter charge be justified as giving a jury discretion to dispense mercy, since it is in the realm of arbitrariness to convict one of the misdemeanor of involuntary manslaughter when all evidence rationally indicates felonious homicide. Our review of the record indicates no basis upon which appellant could rationally have been convicted of involuntary manslaughter, and, hence, he was not entitled to a charge thereon.

Judgment of sentence affirmed.

NIX, J., joins in the opinion of the court and also files a concurring opinion.

LARSEN, J., files a concurring opinion.

ROBERTS, J., files a dissenting opinion in which O'BRIEN, J., joins.

NIX, Justice, concurring.

I enthusiastically join the majority opinion which fairly states the "disputed fact" test which I have been urging this Court to accept. This limitation upon the basic "reasonable basis test" avoids unwarranted intrusion upon the prosecutorial discretion. *Commonwealth v. Garcia*, 474 Pa. 449, 471, 378 A.2d 1199 (1977) (Nix, J. dissenting); *Commonwealth v. Polimeni*, 474 Pa. 430, 449, 378 A.2d 1189 (1977) (Nix, J. dissenting); *Commonwealth v. Ford*, 474 Pa. 480, 486, 378 A.2d 1215 (1977) (Nix, J. dissenting).

LARSEN, Justice, concurring.

I agree with the majority's holding, as I believe that instructing the jury on the offense of involuntary manslaughter where, as here, that crime is not rationally made out by the evidence, perverts one of the foundations of our jurisprudence, the jury system.

Jury instructions on irrelevant lesser-included offenses invite the jury "to render verdicts based on law which has nothing to do with the case so that the jury may, contrary to the facts, 'dispense mercy'. Mercy is not the function of a jury—truth is." *Commonwealth v. McClendon*, 478 Pa. 108, 116–17, 385 A.2d 1337, 1342 (1978) (Dissenting Opinion of Larsen, J.) As a result, any such system of "mercy dispensation" by the jury would be as unconstitutionally standardless and infirm as a prior practice in this Commonwealth, which gave a trial judge unbridled discretion in deciding whether to charge the jury on voluntary manslaughter when that offense was not rationally made out by the evidence. *See, Commonwealth v. Gartner*, 475 Pa. 512, 381 A.2d 114 (1978) (Dissenting opinion of Nix, J.), and *Cf. United States ex rel. Matthews v. Johnson*, 503 F.2d 339 (3rd Cir. 1974) and *Giaccio v. Pennsylvania*, 382 U.S. 399, 86 S.Ct. 518, 15 L.Ed.2d 447 (1966).

Furthermore, we have no guarantee that juries will use unnecessary instructions on lesser-included offenses to dispense just mercy. The practical effect in some cases could be to promote convictions for the lesser grade of crime as a compromise verdict. Because the standards of appellate review reflect its inescapable remoteness, the injustice of such convictions may go unnoticed and, accordingly rules of trial procedure should be fashioned with an eye towards minimizing even the possibility of such an occurrence.

Finally, even if the jury diligently and conscientiously attempts to properly perform their function, irrelevant instructions can only serve to confuse the jury and place an obstacle in the path of a true and correct verdict, particularly in homicide prosecutions, *See, Commonwealth v. Comber*, 374 Pa. 570, 578, 97 A.2d 343, 346–47 (1953).

Consequently, for the foregoing reasons, and also those expressed in this writer's opinion in *Commonwealth v. White,* 490 Pa. 179, 415 A.2d 399 (1980), I join the opinion of the majority.

ROBERTS, Justice, dissenting.

For all the reasons set forth in *Commonwealth v. Garcia,* 474 Pa. 449, 378 A.2d 1199 (1977) (plurality opinion) (Roberts, J., joined by O'Brien & Manderino, JJ.), I would reject the holding of the majority that under the Crimes Code an accused is entitled to an instruction on involuntary manslaughter only where the evidence supports that verdict. Section 2501(a) of the Crimes Code, 18 Pa.C.S. § 2501(a), defines "criminal homicide" as follows:

"*Offense defined.*—A person is guilty of criminal homicide if he intentionally, knowingly, recklessly or negligently causes the death of another human being."

As the Reporter's Comment to Section 2501 points out, "[section 2501] defines the unified offense of 'criminal homicide,' which includes murder, voluntary manslaughter or involuntary manslaughter." Toll, Pennsylvania Crimes Code Annotated 307 (1974). Thus I remain convinced that "[t]he state of mind which suffices to establish the commission of involuntary manslaughter constitutes a lesser kind of culpability than the malice which is an essential element to murder." Id., 474 Pa. at 464, 378 A.2d at 1207. So too, I adhere to the view that

"involuntary manslaughter, which is defined as a killing committed in a reckless or grossly negligent manner, [18 Pa. C.S.] § 2504, also may be committed when a killing is committed intentionally or knowingly. Under the Crimes Code the categories of murder and voluntary manslaughter on the one hand, and involuntary manslaughter on the other, are not mutually exclusive categories. Because an intentional or knowing killing also establishes a negligent killing, all criminal homicides necessarily include involuntary manslaughter as a constituent offense."

Id., 474 Pa. at 465, 378 A.2d at 1207–1208. Accordingly, as in *Garcia*, I would hold that under the Crimes Code "in every murder prosecution a defendant is entitled, upon request, to a jury instruction on involuntary manslaughter." Id., 474 Pa. at 469, 378 A.2d at 1210. Because the trial court failed to grant appellant's timely request for an involuntary manslaughter instruction, this Court should reverse judgment of sentence on the murder conviction and remand for a new trial.

O'BRIEN, J., joins in this dissenting opinion.