J.S59038/13

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellee | : | |
| | : | |
| v. | : | |
| | : | |
| QUANN WHITE, | : | |
| | : | |
| Appellant | : | No. 830 EDA 2013 |

Appeal from the PCRA Order March 4, 2013
In the Court of Common Pleas of Lehigh County
Criminal Division No(s).: CP-39-CR-0002457-2009

BEFORE: BOWES, PANELLA, and FITZGERALD,[*] JJ.

MEMORANDUM BY FITZGERALD, J.:           **FILED SEPTEMBER 16, 2014**

Appellant, Quann White, appeals from the order of the Lehigh County Court of Common Pleas that denied his first, timely Post Conviction Relief Act[1] ("PCRA") petition following an evidentiary hearing. Appellant asserts that the PCRA court erred when denying his ineffective assistance of counsel ("IAC") claims related to the failures of prior counsel to (1) admit into the trial evidence inculpatory statements made by Donald Tillman, (2) object or request a cautionary instruction to comments made by police investigators while interrogating Appellant, (3) impeach an eyewitness, Kristi Farmer, (4) object to evidence suggesting that Appellant had committed prior bad acts,

---

[*] Former Justice specially assigned to the Superior Court.

[1] 42 Pa.C.S. §§ 9541-9546.

and (5) raise a direct appeal claim regarding the trial court's denial of his request for an involuntary manslaughter instruction. We affirm.

Appellant's underlying convictions for murder of the first degree and persons not possess a firearm[2] arise from the shooting of Joseph Botz in a parking lot in the early morning hours of May 9, 2009. Appellant and Botz, along with Appellant's cousin, Olasheiba Hurdle, Hurdle's boyfriend, Donald Tillman, and Appellant's brother, Kenyata White, were drinking at bars and smoking marijuana on the evening of May 8th into May 9th. Immediately before the shooting, Hurdle and Tillman entered a parking lot in their maroon Mitsubishi Gallant and parked. Appellant, Botz, and Kenyata White arrived shortly thereafter in Appellant's wife's blue Ford Focus and parked next to the Mitsubishi. Botz and Appellant exited the Ford and approached Tillman, who was seated in the front passenger seat of the Mitsubishi. At trial, the Commonwealth alleged that Appellant then placed a pistol in Botz's mouth and shot him. Appellant's defense suggested that Tillman stole Botz's pistol, the pistol fired while Appellant and Botz were fighting Tillman to recover the firearm, and the police prematurely concluded that Appellant shot Botz before obtaining all of the evidence.

---

[2] 18 Pa.C.S. §§ 2502(a), 6105.

We summarize the specific trial evidence and procedural history relevant to this appeal.[3] Olasheiba Hurdle and Donald Tillman both testified for the Commonwealth. They stated that after Joseph Botz exited the blue Ford, he initially approached Tillman, who was in the front passenger seat of the maroon Mitsubishi. They testified that Appellant, who had also been in the Ford, approached Botz, shot him, and then returned to the Ford. Kenyata White then drove Appellant out of the parking lot. Tillman also testified that earlier on the evening of May 8, 2009, Appellant told him that he intended to kill Botz because "[Appellant] and somebody did something and went back and told [Botz], so [Botz] came back and told [Appellant] he didn't like that."[4] N.T. Trial, 2/4/10, at 72.

The Commonwealth also called Kristi Farmer, who was exiting a car in the parking lot at the time of the shooting, but was not part of Appellant's group. Farmer corroborated Hurdle and Tillman's testimony that two men exited the Ford and one shot the other. Farmer also testified that she recognized the shooter from a bar and was told his name was Twaan or Quaan. However, she did not make an in-court identification of Appellant as the shooter.

---

[3] The PCRA court opinion contains a more comprehensive summary of the trial evidence. *See* PCRA Ct. Op., 5/22/13, at 1-5.

[4] As noted below, this testimony was the subject of a motion *in limine* raised by the Commonwealth.

Dr. Samuel Land, a forensic pathologist, testified for the Commonwealth and described the fatal wound to Botz as follows: "Basically the gun was shoved into [Botz's] mouth causing an explosive explosion that caused fractures of the maxilla, [and] tears of the lip. . . . [T]he gas expansion caused tearing of the right cheek[, and there was tearing of the u]pper cheek [and] right jaw area as well." *Id.* at 46. Dr. Land noted there were dense deposits of soot on the inside of Botz's cheek, which led him to conclude that firearm was inside Botz's mouth when the fatal shot was fired. *Id.* at 47.

Kenyata White, Appellant's brother, also testified for the Commonwealth. He stated that he saw a gun in the Ford after Appellant returned to the vehicle following the shooting and acknowledged that Appellant told him "something like" Botz "had it coming." N.T. Trial, 2/3/10, at 253.

Additionally, the Commonwealth played audio recordings of two interrogations of Appellant by police investigators. The first interrogation occurred on May 10, 2009, the day after the shooting. That same day, investigators filed a criminal complaint against Appellant. The second interrogation occurred on December 7, 2009, after Appellant was in custody and requested to speak with the investigators. Both recordings contained the investigators' questions to Appellant, Appellant's statements to the

investigators, and the investigators' comments in response to Appellant's statements.

Appellant testified on his own behalf at trial. He denied possession of the pistol on the night of the shooting and testified that Botz believed Tillman stole the firearm. Appellant stated that he and Botz approached Tillman in the parking lot and attempted to wrestle Tillman out of the window of the Mitsubishi when he heard a shot and saw Botz fall. He testified that he and Botz were best friends.

Appellant's wife testified for the defense regarding the events that occurred after the shooting. Although she was prepared to testify that Tillman told her that "he [Tillman] did it," the Commonwealth posed a hearsay objection to that testimony, and the trial court sustained the objection. N.T. Trial, 2/8/10, at 175-77.

Appellant also presented evidence that he suffered from glaucoma and was legally blind. Specifically, Appellant's physicians stated that he had no vision in his left eye and limited vision in his right eye, which allowed him to see only shadows in front of his face.

At the close of the evidence, Appellant's counsel, Eric K. Dowdle, Esq. ("trial counsel"), requested a jury instruction on involuntary manslaughter, which the trial court denied. The jury was thereafter instructed on murder of the first degree and third degree. On February 9, 2010, the jury returned a guilty verdict on murder of the first degree. The trial court separately

found Appellant guilty of person not to possess a firearm. On March 18, 2010, the trial court sentenced Appellant to a mandatory life sentence without parole and a consecutive term of five to ten years' imprisonment for the firearms offense.

Appellant obtained new counsel, Michael Brunnabend, Esq. ("prior appellate counsel"), and took a direct appeal. Prior appellate counsel raised four issues, but did not challenge the trial court's denial of trial counsel's request for an involuntary manslaughter instruction. Moreover, prior appellate counsel did not challenge the trial court's evidentiary rulings that precluded Appellant's wife from testifying about Tillman's alleged inculpatory statement and permitted Tillman to testify that Appellant stated he intended to kill Botz. This Court affirmed the judgment of sentence on April 6, 2011, and the Pennsylvania Supreme Court denied Appellant's petition for allowance of appeal on August 24, 2011. *Commonwealth v. White*, 1810 EDA 2010 (unpublished memorandum) (Pa. Super. Apr. 6, 2011), *appeal denied*, 357 MAL 2011 (Pa. Aug. 24, 2011).

Appellant obtained private PCRA counsel, Burton A. Rose, Esq., who filed the underlying timely PCRA petition on August 27, 2012, and an amended petition on November 13, 2012. On November 19, 2012, the

PCRA court[5] held an evidentiary hearing, at which trial counsel, prior appellate counsel, and Appellant's wife testified. The PCRA court denied Appellant's petition on March 4, 2013, and this appeal followed.[6]

Appellant presents the following questions for review:

> I. WAS THE APPELLANT DENIED EFFECTIVE ASSISTANCE OF TRIAL COUNSEL IN FAILING TO PRESENT A PROPER FOUNDATION TO PERMIT INTRODUCTION OF TESTIMONY THAT DONALD TILLMAN HAD KILLED THE VIC[T]IM?
>
> II. DID TRIAL COUNSEL PROVIDE INEFFECTIVE ASSISTANCE IN FAILING TO OBJECT OR REQUEST CAUTIONARY INSTRUCTIONS REGARDING REPEATED REFERENCES AT TRIAL THAT THE POLICE BELIEVED THAT THE APPELLANT WAS INCREDIBLE AND WAS GUILTY?
>
> III. DID TRIAL COUNSEL PROVIDE INEFFECTIVE ASSISTANCE IN FAILING TO IMPEACH KEY PROSECUTION WITNESS KRISTI FARMER WITH HER PREVIOUS CRIM[E]N FALSI CONVICTIONS AND HAVING BEEN UNDER THE INFLUENCE OF ALCOHOL?
>
> IV. DID TRIAL COUNSEL PROVIDE INEFFECTIVE ASSISTANCE IN FAILING TO OBJECT OR REQUEST CAUTIONARY INSTRUCTIONS REGARDING REFERENCES THAT THE APPELLANT MAY HAVE COMMITTED ANOTHER SERIOUS CRIMINAL OFFENSE?
>
> V. DID [PRIOR] APPELLATE COUNSEL PROVIDE INEFFECTIVE ASSISTANCE IN FAILING TO ADVANCE AND PRESERVE ON APPEAL THE ERROR ON THE PART OF THE TRIAL JUDGE IN REFUSING TO INSTRUCT THE JURY AS TO INVOLUNTARY MANSLAUGHTER?

---

[5] We note that the Honorable Lawrence J. Brenner presided over Appellant's trial and sentencing proceedings. The Honorable Douglas G. Reichley presided over the instant PCRA proceedings.

[6] Appellant timely filed his notice of appeal and complied with the PCRA court's order to file a Pa.R.A.P. 1925(b) statement.

Appellant's Brief at 3. Appellant argues he is entitled to a new trial based on his various IAC claims regarding trial counsel's and prior appellate counsel's performance. For the reasons that follow, we affirm the PCRA court's conclusion that no PCRA relief was due.

Our standards of reviewing an order denying PCRA relief are well settled.

> We must examine whether the record supports the PCRA court's determination, and whether the PCRA court's determination is free of legal error. The PCRA court's findings will not be disturbed unless there is no support for the findings in the certified record.
>
> . . . [A] PCRA petitioner will be granted relief only when he proves, by a preponderance of the evidence, that his conviction or sentence resulted from the "[i]neffective assistance of counsel which, in the circumstances of the particular case, so undermined the truth-determining process that no reliable adjudication of guilt or innocence could have taken place." As our supreme court has stated:
>
>> It is well-established that counsel is presumed to have provided effective representation unless the PCRA petitioner pleads and proves all of the following: (1) the underlying legal claim is of arguable merit; (2) counsel's action or inaction lacked any objectively reasonable basis designed to effectuate his client's interest; and (3) prejudice, to the effect that there was a reasonable probability of a different outcome if not for counsel's error.
>
> The PCRA court may deny an ineffectiveness claim if the petitioner's evidence fails to meet a single one of these prongs. Moreover, a PCRA petitioner bears the burden of demonstrating counsel's ineffectiveness.

*Commonwealth v. Franklin*, 990 A.2d 795, 797 (Pa. Super. 2010) (citations omitted). "[W]e may affirm the decision of the [PCRA] court if there is any basis on the record to support the [PCRA] court's action; this is so even if we rely on a different basis in our decision to affirm." *Commonwealth v. Wiley*, 966 A.2d 1153, 1157 (Pa. Super. 2009) (citation omitted).

Additionally, a PCRA petitioner must demonstrate that the issues raised by his petition have not been waived. *Commonwealth v. Steele*, 961 A.2d 786, 796 (Pa. 2008). "A PCRA claim is waived if the petitioner could have raised it but failed to do so before trial, at trial, during unitary review, on appeal or in a prior state post-conviction proceeding. 42 Pa.C.S. § 9544(b)." *Id.* (quotation marks omitted). A PCRA claim of trial error, which was not raised in a direct appeal, is generally not a basis for relief unless an independent IAC claim is presented. *See id.* at 799 (concluding that allegation of error with respect to evidentiary ruling was waived where petitioner could have raised it on direct appeal but did not do so).

Appellant first challenges the PCRA court's denial of his IAC claim that trial counsel failed to admit evidence of the alleged exchange between his wife and Donald Tillman. As noted above, Appellant's wife alleged she had a conversation with Tillman regarding who shot Botz. At the PCRA hearing, she testified that shortly after they were interviewed by police about Botz's

death, she asked Tillman who shot Botz, and Tillman responded that he did "what the 'F' [he] had to do." N.T. PCRA Hr'g, 11/19/12, at 65.

By way of further background, the record establishes that trial counsel was aware of Appellant's wife's proposed testimony that Tillman stated he "did it." *See* N.T., 2/8/10, at 175-77. However, trial counsel did not cross-examine Tillman with his alleged statement to Appellant's wife. When trial counsel called Appellant's wife to testify for the defense, the Commonwealth requested an offer of proof. Trial counsel proffered that Appellant's wife would testify about Tillman's statement, and the Commonwealth raised a hearsay objection. The trial court sustained the objection, ruling that the proffer was not admissible under the "excited utterance" exception.[7] The court further opined that the proffer was inadmissible because trial counsel failed to disclose the alleged prior statement to Tillman during cross-examination or give him an opportunity to explain or deny making the statement. The trial record also suggests that Tillman left Pennsylvania by the time Appellant sought to admit his wife's testimony and that trial counsel did not seek to compel his attendance for the presentation of the defense.

Appellant's present argument focuses on trial counsel's failure to take adequate steps to ensure the admission of his proffer of his wife's testimony regarding Tillman's statement by either cross-examining Tillman or

---

[7] *See* Pa.R.E. 803(2) (subsequently amended Jan. 17, 2013).

compelling his attendance during the defense's case. Appellant also asserts that his proffer was admissible as an excited utterance. Although the PCRA court determined that trial counsel possessed a reasonable strategic basis for not questioning Tillman about his alleged inculpatory statement, PCRA Ct. Op., 5/22/13, at 8-9, we conclude that Appellant is not entitled to relief for a different reason.

At the outset, we note that an assertion that the trial court erred in sustaining the Commonwealth's hearsay objection could have been, but was not raised in Appellant's direct appeal. Moreover, Appellant did not present an independent argument of prior appellate counsel's ineffectiveness related to the trial court's hearsay ruling. Accordingly, the claim that Appellant's proffer was admissible under the rules governing hearsay evidence has been waived for the purposes of Appellant's instant PCRA challenge. *See Steele*, 961 A.2d at 799.

As to Appellant's remaining assertion—namely, that trial counsel was ineffective for failing to establish a proper foundation to admit Tillman's statement—it appears that the trial court relied on Pa.R.E. 613 when suggesting that Appellant's proffer of his wife's testimony required trial counsel to establish a foundation during the examination of Tillman. Rule 613 provided, in relevant part:

> **(a) Examining witness concerning prior inconsistent statement.** A witness may be examined concerning a prior inconsistent statement made by the witness, whether written or not, and the statement need

not be shown or its contents disclosed to the witness at that time, but on request the statement or contents shall be shown or disclosed to opposing counsel.

**(b) Extrinsic evidence of prior inconsistent statement of witness.** Unless the interests of justice otherwise require, extrinsic evidence of a prior inconsistent statement by a witness is admissible only if, during the examination of the witness,

(1) the statement, if written, is shown to, or if not written, its contents are disclosed to, the witness;

(2) the witness is given an opportunity to explain or deny the making of the statement; and

(3) the opposing party is given an opportunity to question the witness.

Pa.R.E. 613(a), (b) (subsequently amended Jan. 17, 2013). The admission of a witness's prior inconsistent statement for the purposes of impeachment does not depend on the truth of the matter asserted, but rather the fact that the statement was made and that it was inconsistent with the witness's testimony.[8] ***See McManamon v. Washko***, 906 A.2d 1259, 1268 (Pa. Super. 2006).

---

[8] By way of contrast, Pa.R.E. 801 defined hearsay as follows:

(a) Statement. A "statement" is (1) an oral or written assertion or (2) nonverbal conduct of a person, if it is intended by the person as an assertion.

(b) Declarant. A "declarant" is a person who makes a statement.

(c) Hearsay. "Hearsay" is a statement, other than one made by the declarant while testifying at the trial or

Instantly, Appellant's proffer was not intended to impeach Tillman with his alleged statement to his wife. Rather, Appellant sought to admit his wife's testimony as substantive evidence of Tillman's culpability for shooting Botz, that is, that Tillman "did it." **See** N.T., 2/8/10, at 175-77; **see also** Appellant's Brief at 8 (arguing that "[t]he failure to produce potentially exculpatory evidence was a critical omission at trial, for if the jury heard and believed [Appellant's wife's] testimony, the Appellant could well have been acquitted"). Accordingly, Rule 613 did not apply to Appellant's proffer.

Thus, it was improper for the trial court to suggest that a foundation under Rule 613 was required. **Compare** Pa.R.E. 613 **with** Pa.R.E. 803(2). Rather, the proper inquiry was whether Appellant's proffer of Tillman's statement to Appellant's wife constituted an "excited utterance" or other exception to the hearsay rule. **See** Pa.R.E. 803(2). However, Appellant's

---

hearing, offered in evidence to prove the truth of the matter asserted.

Pa.R.E. 801 (subsequently amended Jan. 17, 2013). Pa.R.E. 803(2) provided the following exception to the general rule excluding hearsay:

Rule 803. Hearsay exceptions; availability of declarant immaterial

\* \* \*

**(2) Excited utterance.** A statement relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition.

Pa.R.E. 803(2) (subsequently amended Jan. 17, 2013).

- 13 -

present IAC claim challenging trial counsel's failure to establish a foundation under Rule 613 lacks arguable merit because trial counsel cannot be held ineffective for failing to do that which our rules of evidence did not require.[9] For these reasons, we conclude that no relief was due based on the instant IAC claim.

Appellant next challenges the PCRA court's denial of his IAC claim based on trial counsel's failure to object to, or request a cautionary instruction regarding, the police investigators' comments contained in the two audio-recorded interrogations. Appellant refers to the investigators' comments that all of the "[puzzle] pieces [in their investigation] pointed at [Appellant,]"[10] Appellant was lying to them,[11] all of the other witnesses' statements were consistent,[12] and only Appellant's statements were inconsistent with the other witnesses.[13] Appellant also refers to comments

---

[9] Moreover, Appellant does not expressly argue that trial counsel should have attempted to impeach Tillman with a prior inconsistent statement to place Tillman's statement before the jury. Indeed, such an argument would ignore the fact that the Commonwealth would be entitled to a cautionary instruction that Appellant's wife's proposed testimony was offered only to evaluate Tillman's credibility and not for the purposes of the truth of the matters asserted.

[10] N.T., 2/8/10, at 104, 117, 145, 150.

[11] N.T., 2/5/10, at 223, 225, 248, 264; N.T., 2/8/10, at 133.

[12] N.T., 2/5/10, at 215, 218; N.T., 2/8/10, at 105-06.

[13] *Id.*

that Appellant would not be believed if he went to court.[14]  Appellant argues these comments "improperly bolstered the Commonwealth's evidence and provided the jury with the officers' own personal assurances that . . . Appellant was not truthful, thereby invading the jury's credibility determining function."  Appellant's Brief at 15.  He further asserts that the PCRA court erred when concluding that trial counsel stated a reasonable strategy for declining to object or failing to request a cautionary instruction.  No relief is due.

As noted above, one day after the shooting, on May 10, 2009, police investigators interrogated Appellant and later that same day filed a criminal complaint against him.  Subsequently, while Appellant was in custody, he requested to speak with investigators, and the second interrogation occurred on December 7, 2009.  In the May 10th recording, Appellant stated that he was with Botz on the night of May 8, 2009, but was unaware that Botz was killed because Botz left his group without incident.  In the December 7th recording, Appellant conceded he was present when Botz was killed.  Appellant told investigators that Botz believed that Tillman stole his pistol and that Botz confronted Tillman while Tillman was in the passenger seat of the Mitsubishi Gallant.  Appellant then joined Botz in attacking Tillman.  Similar to his trial testimony, Appellant asserted that he and Botz tried to wrestle Tillman out of the car when he heard a gunshot and saw Botz fall to

---

[14] N.T., 2/8/10, at 134.  **See also** N.T., 2/5/10, at 247-48, 254.

the ground. The investigators' comments and opinions appeared throughout both interrogations.[15]

When reviewing the PCRA court's rulings on this IAC claim, we also note the following. First, Appellant's trial counsel did not contest the playing of the audio recordings of the interrogations in a motion *in limine* or a request for an offer of proof. Therefore, we are left to presume that the Commonwealth played the recordings as evidence of Appellant's prior inconsistent statements and his consciousness of guilt. **See** N.T., 2/9/10, at 24 (indicating that trial court instructed jury on consciousness of guilt based on Appellant's statements to investigators). Second, the investigators' comments and opinions were presented to the jury by the playing of audio recordings, not by direct testimony from the investigators. Third, the trial court, as Appellant observes, did not issue specific instructions to guide the jury's consideration of the audio recordings or caution the jury that it should not accept the investigators' comments and opinions regarding credibility or Appellant's guilt. Lastly, Appellant's trial testimony was substantially similar to his December 7, 2009 statement.

It is well settled that:

> [A] basic requisite for the admissibility of any evidence in a criminal case is that it be competent and relevant.

---

[15] A copy of the recordings played to the jury were not forwarded to this Court as part of the certified record. However, the recordings were transcribed into the notes of testimony at trial.

> Evidence is relevant when it tends to establish facts in issue or in some degree advances the inquiry and thus has probative value. Not all relevant evidence is admissible, however, and the trial court may exercise its discretion to exclude evidence that, though relevant, may confuse, mislead, or prejudice the jury. Since rulings on the relevancy of evidence rest within the sound discretion of the trial court, they will not be reversed absent a manifest abuse of discretion.

*Commonwealth v. Hindi*, 631 A.2d 1341, 1344 (Pa. Super. 1993).

"The determination of the credibility of a witness is within the exclusive province of the jury." *Commonwealth v. Crawford*, 718 A.2d 768, 772 (Pa. 1998) (citation omitted). An individual, by virtue of his perceived authority before the jury, should not invade the jury's exclusive province to assess the evidence of a defendant's guilt and the credibility of the witnesses. *See, e.g.*, *Commonwealth v. Potter*, 285 A.2d 492, 493 (Pa. 1971) (noting it is improper for prosecutor to express to jury his personal belief as to truth or falsity of witness' testimony); *Commonwealth v. Sampson*, 900 A.2d 887, 890 (Pa. Super. 2006) (same); *Commonwealth v. Montavo*, 653 A.2d 700, 705 (Pa. Super. 1995) (holding "expert testimony should not invite the jury to abdicate its responsibility to ascertain and assess the facts and, instead, defer to the expert's opinion"); *see also Commonwealth v. Flor*, 998 A.2d 606, 642 n.19 (Pa. 2010) (noting "judge's expression of opinion [of a defendant's guilt or innocence] leaves an indelible imprint on the minds of the jury and thereby invades the province of the jury to return a verdict.").

Instantly, the trial evidence regarding, the credibility of Appellant and the other witnesses and the alleged inconsistencies between Appellant's statements and the other witnesses' testimony against him did not require specialized knowledge for the jury to evaluate. **See Crawford**, 718 A.2d at 772; **Montavo**, 653 A.2d at 705. Therefore, we agree with Appellant that there was arguable merit to his claim that the recordings contained objectionable statements that could be construed as invading the exclusive fact-finding function of the jury.[16]

As to the PCRA court's determination that trial counsel stated a reasonable strategic basis for declining to object or a request for a cautionary instruction, we are mindful of the following principles:

> [A] review of matters involving trial strategy is deferential. Trial counsel will be deemed to have acted reasonably if the course chosen by trial counsel had some reasonable basis designed to effectuate his client's interests. Moreover, a claim of ineffectiveness will not succeed by comparing, in hindsight, the trial strategy trial counsel actually employed with the alternatives foregone. Finally, [a]lthough we do not disregard completely the reasonableness of other alternatives available to counsel, the balance tips in favor of a finding of effective assistance as soon as it is determined that trial counsel's decision had any reasonable basis.

---

[16] The Commonwealth suggests there was no arguable merit to this claim because the investigators were merely "doing their jobs." **See** Commonwealth's Brief at 13. However, this argument is not responsive to the underlying question of whether the jury should have heard the investigators' comments.

*Commonwealth v. Miller*, 987 A.2d 638, 653 (Pa. 2009) (citations and quotation marks omitted); *see also Strickland v. Washington*, 466 U.S. 668, 690 (1984) (indicating that "strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable").

Furthermore,

> [c]ounsel are not constitutionally required to forward any and all possible objections at trial, and the decision of when to interrupt oftentimes is a function of overall defense strategy being brought to bear upon issues which arise unexpectedly at trial and require split-second decision-making by counsel. Under some circumstances, trial counsel may forego objecting to an objectionable remark or seeking a cautionary instruction on a particular point because [o]bjections sometimes highlight the issue for the jury, and curative instructions always do.

*Commonwealth v. Koehler*, 36 A.3d 121, 146 (Pa. 2012) (citations and quotation marks omitted).

Instantly, trial counsel testified at the PCRA hearing that his defense strategy was to show the investigators "rushed" to the conclusion that Appellant shot Botz. N.T., 11/19/12, at 19. Rather than object to the investigators' comments, trial counsel stated that he attempted to "juxtapose those statements on the part of the police . . . against the actual lack of physical evidence." *Id.* at 19-20. Trial counsel also testified that he considered requesting a cautionary instruction, but was concerned that it would "do as much damage as any good" and would undermine his cross-examination. *Id.* at 20-21. Lastly, trial counsel stated that the recordings

of Appellant's interrogations lasted for hours and suggested that the jury began to "glaze over" while the recordings were played. *Id.* at 21.

The record thus supports the PCRA court's finding that trial counsel stated a basis for foregoing objections to the matters identified by Appellant in his PCRA petition. As to the investigators' comments that they believed Appellant was lying and they believed Appellant was guilty, we discern no basis to disturb the court's determination that trial counsel's stated basis was reasonable in light of his strategy to show that the investigators "rushed" to their judgment that Appellant shot Botz. Moreover, trial counsel's decision not to highlight the investigators' comments and opinions by requesting a cautionary instruction constituted a reasonable strategy. *See Koehler*, 36 A.3d at 146.

We are mindful, however, that trial counsel's decision not to object permitted the jury to hear the investigators' opinions on the credibility and consistency of Appellant's statements versus the other witnesses' statements, who all testified at trial. Furthermore, trial counsel's strategy permitted the jury to hear comments that Appellant would not be believed or would look foolish if he went to court. Nevertheless, our review of counsel's performance must be deferential once counsel states a reasonable basis for his action or omission. *See id.*; *Strickland*, 466 U.S. at 690; *Miller*, 987 A.2d at 653. Based on our review of the record, we cannot conclude that the PCRA court erred in crediting trial counsel's explanation for forgoing

- 20 -

contemporaneous objections or cautionary instructions regarding these comments and determining that counsel's risk-benefit analysis had some reasonable basis to effectuate Appellant's interests. **See Koehler**, 36 A.3d 146. Accordingly, under the totality of the circumstances presented in this case, we agree with the PCRA court that Appellant did not overcome the strong presumption that trial counsel provided constitutionally effective representation.[17] Thus, no relief is due.

Appellant's third argument is directed to the PCRA court's ruling that trial counsel stated a reasonable strategic basis for not impeaching Kristi Farmer with her prior *crimen falsi* conviction and not emphasizing she was drinking alcohol before witnessing the shooting. To reiterate, Farmer testified that she saw a blue car, with three occupants, park next to a red car containing a male and a female. **Id.** at 175-76. She stated that a male wearing a red shirt and a black hat exited the blue car and went to the passenger side of the red car and shook hands with the male in the passenger seat. **Id.** at 176-77. A second male, who was wearing a blue hoodie, exited the blue car and shot the male standing next to the red car. **Id.** At the end of Farmers' testimony, the Commonwealth asked whether she was "drinking" that night. She answered, "Yes," and stated she was

---

[17] It would be preferable for counsel to seek redaction of objectionable comments before audio recordings are played to the jury. However, such hindsight evaluations of alternatives are not permitted when assessing the reasonableness of trial counsel's strategies. **See Miller**, 987 A.2d at 653.

drinking "[g]rape juice and cranberry juice" and "a few shots of chocolate cake." N.T., 2/4/10, at 188. The Commonwealth did not ask her about her prior conviction.

During cross-examination, trial counsel impeached Farmer with a statement she made in a recorded interview with police on the morning of the shooting. Specifically, trial counsel noted that Farmer initially described the occupants of the blue car as four males, all with "thick Muslim beards." *Id.* at 197. Trial counsel emphasized that Farmer did not testify to several details in her prior statement and impeached her trial testimony that she saw the second male from the blue car holding something in his hand using her prior statements. *Id.* at 197-213, 221. However, trial counsel did not impeach Farmer's ability to perceive and recollect the events based on her consumption of alcohol. Moreover, although trial counsel was aware that Farmer had at a prior *crimen falsi* conviction, he did not cross-examine her regarding it. Subsequently, during the charging conference, trial counsel stated that he did not raise the issue of Farmer's *crimen falsi* conviction because he "didn't want to start her crying again." N.T., 2/8/10, at 312. The Commonwealth averred that it intended to question her about prior convictions but did not do so. *Id.*

With respect to his failure to clarify that Farmer had been drinking alcohol before witnessing the shooting, trial counsel testified at the PCRA hearing that

her statement immediately after being at the bar was better for the defense than her statement when she was still put on the witness stand . . . . She said four Muslim guys with long beards did it. And then she turned her back and didn't see anything. I liked that statement a lot better than her coming in and saying something about how she saw what happened[.]

*Id.* at 38.

With respect to his decision not to impeach Farmer with *crimen falsi*, trial counsel explained:

What I didn't want to do is turn the jury off by being a bully with her because she was a very soft witness. She cried and carried on a lot, and that kind of thing, and the last thing I wanted to do was press her with something that really had very little to do with this case clearly. And in terms of *crimen falsi*, it was not the, oh my God, thundering clap of doom as to her credibility.

Now, Ms. Farmer made statements in this case that I thought did much more damage to her and much more damage to her testimony then—for lack of a better term— this stupid summary retail theft did. The—her first statement about four men with Muslim beards being in the car, as opposed to three men in the car, and then . . . the kind of half-hearted attempt to identify [Appellant], I thought was much more persuasive and much more telling to the jury about her fashioning her statement and her testimony than attacking her with [*crimen falsi*].

*Id.* at 32-33.

Following our review, we discern no abuse of discretion or error in the PCRA court's determination that trial counsel stated a reasonable strategic basis for declining to clarify that Farmer drank alcohol before witnessing the shooting. Trial counsel made a strategic choice to emphasize Farmer's initial statement to the police that four Muslim males were at the scene of the

shooting. Additionally, we observe that counsel's choice was consistent with his general defense strategy regarding the investigators' rush to find Appellant guilty. Accordingly, we agree with the PCRA court that Appellant's IAC claim with respect to the failure to emphasize Farmer's consumption of alcohol did not state a basis for relief.

With respect to Farmer's prior *crimen falsi*, we acknowledge trial counsel explained that he did not want to "turn off the jury" by "bullying" Farmer and instead wanted to focus on her prior statement. We further note that the PCRA court concluded that counsel's explanation was a reasonable basis for declining to raise Farmer's *crimen falsi*. However, trial counsel's explanation failed to consider that Farmer was a unique witness because she provided independent corroboration of the inculpatory testimony of Donald Tillman and Olasheiba Hurdle. Moreover, although trial counsel's decision to focus on Farmer's prior statement was reasonable, her *crimen falsi* would not distract from that strategy and could impeach her trial testimony. Trial counsel, moreover, failed to consider any alternatives to presenting this issue, such as entering into a stipulation with the Commonwealth before the close of evidence. **See** N.T. Trial, 2/8/10, at 312 (indicating Commonwealth intended to raise Farmer's prior convictions during direct examination). Accordingly, we cannot accept the PCRA court's conclusion that trial counsel stated a reasonable basis for not raising Farmer's *crimen falsi*.

As to the prejudice attendant the failure to introduce Farmer's *crimen falsi*, Appellant asserts that Farmer was critical to the Commonwealth's case because she was an eyewitness to the shooting and was not connected to him or Tillman. Nevertheless, Farmer's testimony was largely corroborative of the principal witnesses' testimony against Appellant, namely, that of Olasheiba Hurdle and Donald Tillman, as well as Kenyata White, who acknowledged that Appellant had a firearm with him after the shooting and stated that Botz "had it coming." Under these circumstances, and in light of trial counsel's cross-examination upon her prior inconsistent statement, we conclude that the failure to raise Farmer's *crimen falsi* at trial did not taint the fairness of the proceeding or affect the outcome at trial. Therefore, we discern no basis to conclude that Appellant established prejudice for the purposes of this claim of ineffectiveness. **See Spotz**, 84 A.3d at 312. Thus, no relief is due.

Appellant's fourth argument is directed to the PCRA court's ruling that trial counsel was not ineffective for failing to object to evidence of Appellant's prior bad acts. The evidence giving rise to this claim was initially considered in a motion *in limine*. Specifically, the Commonwealth proffered that Donald Tillman was prepared to testify that Appellant told him that "he's going to shoot Joseph Botz, the victim in this case [a]nd the reason that he is going to shoot him is because when [Appellant] was in prison [Appellant] and his cellmate did something that only the two of them knew about[.]"

N.T., 2/2/10, at 32. Trial counsel objected, arguing that the proffer was too vague and unduly prejudicial because it referenced Appellant's prior incarceration. *Id.* The trial court determined that the proffer was admissible but required the Commonwealth to instruct Tillman not to reference Appellant's prior incarceration or cellmate. *Id.* at 34.

Thus, contrary to Appellant's assertion, trial counsel did object to the Commonwealth's proffer. In any event, we agree with the PCRA court that neither Tillman's testimony nor the Commonwealth's closing argument established that the alleged acts between Appellant and his cellmate were prior bad acts.[18] Accordingly, no relief is due.

---

[18] As noted above, Tillman subsequently testified at trial that Appellant told him he was going to shoot Botz, because "him and somebody did something and went back and told [Botz], so [Botz] came back and told [Appellant] he didn't like that." N.T., 2/4/10, at 72. Subsequently, during closing arguments, the Commonwealth made the following reference to Tillman's testimony:

> So why did [Botz] have it coming? A secret. It was a secret about [Appellant]. One the [Appellant] would go to such great lengths to protect. But even today we still don't know what it is. One that we know, however, is worth killing for. The secret, whatever it was that [Botz] knew, that he and that other guy had done, it's still safe. He made sure of that.

N.T., 2/8/10, at 347.

We note that at the time of the PCRA hearing, trial counsel testified that he believed the nature of Donald Tillman's allegation was that Appellant and his cellmate engaged in same-sex intercourse and that Botz learned of this activity. N.T., 11/19/12, at 41-42.

Appellant's final argument is directed to the PCRA court's rejection of his claim that prior appellate counsel was ineffective for failing to raise a direct appeal challenge to the trial court's refusal to give an involuntary manslaughter charge. The PCRA court concluded this claim was meritless because the trial court properly ruled that an involuntary manslaughter instruction was not warranted in light of the evidence. Appellant contends he was entitled to the instruction in light of his evidence that he had been struggling with Tillman when the firearm discharged and that prior appellate counsel should have raised the issue on appeal. No relief is due.

As to the arguable merit prong of this claim, it is well settled that

> [d]efendants are generally entitled to instructions that they have requested and that are supported by the evidence. We have explained that the reason for this rule is that "instructing the jury on legal principles that cannot rationally be applied to the facts presented at trial may confuse them and place obstacles in the path of a just verdict." A criminal defendant must, therefore, "establish that the trial evidence would 'reasonably support' a verdict based on the desired charge and may not claim entitlement to an instruction that has no basis in the evidence presented during trial."

*Commonwealth v. Hairston*, 84 A.3d 657, 668 (Pa. 2014) (citations omitted).

The Pennsylvania Supreme Court has made clear that the issuance of lesser-included homicide offenses must be "firmly grounded in logic and policy," and cannot be justified "as giving a jury discretion to dispense

mercy." **Commonwealth v. Williams**, 415 A.2d 403, 404-05 (Pa. 1994).

Indeed, the **Williams** Court cautioned

> to instruct a jury on possible verdicts that are unsupported by any evidence can serve only to pervert justice: Not only may the jury be confused by what appear to be irrelevant instructions, and thereby possibly reach a mistaken verdict, but a conviction for the lesser offense may occur out of discriminatory favor for the defendant or out of animosity for the victim, or the jury might substitute its own visceral reaction for the classification established by the legislature.

**Id.**

The legal principles underlying an involuntary manslaughter charge are as follows:

> Involuntary manslaughter is defined as a killing that occurs when, "as a direct result of the doing of an unlawful act in a reckless or grossly negligent manner, or the doing of a lawful act in a reckless or grossly negligent manner, [an individual] causes the death of another person." 18 Pa.C.S. § 2504(a).

**Commonwealth v. Fletcher**, 986 A.2d 759, 791 (Pa. 2009).

Although Appellant asserts his testimony established he was criminally reckless by wrestling with Tillman, the Commonwealth presented the only evidence regarding the manner and cause of death. Specifically, the Commonwealth's expert testimony suggested that the firearm was placed inside the Botz's mouth before the shot was discharged. Appellant presented no evidence countering this expert testimony. Accordingly, Appellant's contention that the alleged act causing death was accidental or merely reckless was unsupported in the record, and his attempt to focus the

jury upon the alleged struggle prior to the firing of the gun did not warrant an involuntary manslaughter instruction. **See Williams**, 415 A.2d 403, 404 (Pa. 1994) (recklessness for involuntary manslaughter charge not suggested by the evidence where defendant struck twelve blow to victim's head). Thus, we agree with the PCRA court that this IAC claim was meritless.

Order affirmed.

Judge Panella joins the memorandum.

Judge Bowes concurs in the result.
Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 9/16/2014